**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| Scott Bailey,<br><br>Plaintiff,<br><br>vs.<br><br>Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation<br><br>Defendants. | Case No. 1:14-cv-00477-S-LDA<br><br>**PLAINTIFF'S RULE 16 STATEMENT** |

Pursuant to the Court's March 18, 2015 Order setting a Rule 16(b) Scheduling Conference and Local Rule 16, counsel for Plaintiff Scott Bailey ("Plaintiff") submits this written statement.

**1. Factual Overview**

Plaintiff is a Property and Casualty Specialist ("PCS") who was employed by Defendant to sell homeowners and auto insurance. Plaintiff is paid commissions based on sales production. He did not receive guaranteed salary and he did not receive the FLSA salary basis minimum of $455.00 per week. Plaintiff improperly has been classified as an exempt employee, when he does not qualify for any such exemption. Namely, MetLife improperly categorized Plaintiff as an outside sales employee when in fact he regularly and customarily conducted his business from inside a MetLife office. As a result, he should have been paid overtime by Defendant for hours worked over forty in a workweek but was not paid the overtime premium rate required under the FLSA.

MetLife has a written policy requiring that PCSs like Plaintiff have their offices open for business during regular business hours. The entire job position is set up around PCSs selling insurance from their local offices. At great expense to a PCS, MetLife requires that Plaintiff maintain and furnish his office in a professional manner so that it is acceptable for visiting customers. MetLife imposes a variety of standardized rules on Plaintiff regarding how he should maintain his office and how he should conduct business from his office.

For example, MetLife has an extensive electronic system set up so that PCSs like Plaintiff engage in the entire sales process (from sales pitch to closing and binding of insurance) from their offices. The system must be used to obtain information about which policies are up for renewal, to access client information generally and to engage in the sales process with potential customers. The system also allows PCSs like Plaintiff to purchase leads and engage in other marketing activities, including setting up websites and sending out mailings to these leads. As a result of MetLife's policies that required performance of sales duties from a MetLife office, it was extremely rare for Plaintiff to meet with clients or prospective clients away from his office as part of the sales process; for example, one of the only occasions where he met with a client away from the office occurred because the client was injured after falling off his roof. Rather, Plaintiff regularly and customarily conducted his sales work from the MetLife office he was required to maintain and utilizing the MetLife computerized system that enabled him to conduct his sales work from his office. Plaintiff is therefore a non-exempt employee entitled to overtime for each hour he worked over forty in a workweek.

**2. Legal Issues**

Plaintiff was not an outside sales person and is therefore a non-exempt employee entitled to overtime. MetLife failed to comply with 29 U.S.C. § 207 because Plaintiff worked for MetLife in excess of forty hours per week, but MetLife failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay.

The Department of Labor ("DOL") regulations establish that the outside sales exemption is meant for traditional salespeople meeting with and conducting sales with customers in the field:

> The outside sales employee . . . makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. 29 C.F.R. § 541.502.

Courts applying the regulation focus on whether critical parts of the sales process are conducted out of the office with customers. Noting that "making sales" may involve more than a single activity, the court in *Wong v. HSBC Mortg. Corp.*, 749 F. Supp. 2d 1009, 1013 (N.D. Cal. 2010) (citing Dep't of Labor, Wage and Hour Div., Opinion 2007-1, 2007 WL 506574 (Jan. 25, 2007)), emphasized that an "employee is properly classified as an 'an outside sales employee' if the activities occurring 'outside of the office are critical to the sales process' and occur on a customary and regular basis." *Id.* The court recognized that merely conducting non-sales activities out of the office was insufficient. *Id.* The court specifically explained that employees, for example, who never met with a customer or potential customer outside the offices did not perform any activities that can be characterized as "making sales" while away from an office. *Id.* at 1015. The court found that the key inquiry required looking at the nature of the activities conducted outside of the office and determining whether these activities were "critical to the sales process." *Id.* at 1014–17.

Similarly, in *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 923524, at *7-9 (S.D. Tex. Feb. 13, 2014), the court explained that the outside sales exemption requires a "more qualitative than quantitative focus on the outside activity." *Id.* at *7. The court refused to simply count hours in and out of the office and instead held that the outside sales exemption applies "when most or 'virtually all of the indispensable components of the sales efforts are concentrated in the outside period.'" *Id.* (citations to DOL letters omitted). The court ultimately

denied summary judgment noting that a factfinder would need to determine whether the key sales activities were conducted outside of the office on a weekly basis. *Id.* at *9.

There is also a question of whether MetLife's violation was willful. When a FLSA violation is "willful," the limitations period looks back three years from the filing date of a consent to join the case. 29 U.S.C. §§ 255(a), 260. Willful conduct means "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [statute.]" *Chao v. A-One Med. Servs., Inc*., 346 F.3d 908, 918 (9th Cir. 2003), *cert. denied*, 541 U.S. 1030 (2004). Prior FLSA violations put the employer on notice of other potential FLSA requirements, and an employer who does not take any action may be held to have willfully violated the FLSA. *See, e.g., Hoffman v. Proof's Med Team*, 394 F.3d 414, 419 (6th Cir. 2005) (finding willfulness most frequently in situations in which the employer deliberately chose to avoid investigating).

Dated: March 25, 2015.

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, PC

/s/Ty D. Frankel
Andrew S. Friedman (*Admitted Pro Hac Vice*))
Ty D. Frankel (*Admitted Pro Hac Vice*)
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 274-1100
Fax: (602) 274-1199
afriedman@bffb.com
tfrankel@bffb.com

Jeffrey C. Schreck (#2428)
134 Brown Street
Providence, RI 02906
Telephone: (401) 421-9600
Fax: (866) 587-1527
jschreck@msn.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on March 25, 2015.

/s/ Karen Vanderbilt